1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEMOCRITUS PUNLA,

        Plaintiff,

  v.

TERMINAL MAINTENANCE CO. and TOM
VERELLO,

        Defendants.

_____/

No. C 06-00014 WHA

**ORDER (1) REMANDING
ACTION TO STATE COURT (2)
FINDING AS MOOT MOTION TO
DISMISS AND (3) DENYING
ATTORNEY'S FEES AND COSTS**

**INTRODUCTION**

      Plaintiff seeks an order remanding this employment-discrimination action to state court.
Defendants assert that the complaint fails to state a claim upon which relief can be granted.
They ask for dismissal. Plaintiff also asks for an award of attorney's fees and costs. The Court
has no removal jurisdiction over the instant action. Contrary to defendants' assertion, none of
plaintiff's claims are preempted by the federal Labor Management Relations Act. The action is
therefore **REMANDED**. Defendants' motion to dismiss is consequently **MOOT**. Although
incorrect, defendants had an objectively reasonable basis for seeking removal. The request to
award fees and costs therefore is **DENIED**.

**STATEMENT**

      Plaintiff Democritus Punla worked as a foreman for defendant Terminal Maintenance
Co., which repairs and maintains the giant cargo containers used in transoceanic shipping. For
at least part of his tenure at Terminal Maintenance, plaintiff worked under a union contract

between the company and Local No. 10 of the International Longshoremen's and Warehousemen's Union (Opp. 2).

Plaintiff filed a complaint in Alameda County Superior Court asserting only state-law claims. He alleged that Terminal Maintenance and one of its supervisors, defendant Tom Verello, discriminated against and harassed him because he is Filipino-American. He also claimed that they retaliated when he complained about such treatment. He further accused Terminal Maintenance of negligently retaining and supervising Mr. Verello, and of breaching its duty to prevent unlawful discrimination (Compl. ¶¶ 1–3, 21, 26, 31, 37, 42).

He alleged that Mr. Verello treated him differently than "Caucasian" workers by approving their overtime, sick leave and vacation leave but denying his own. He asserted that he was shouted at, threatened with termination and demoted because he filed a union grievance about Mr. Verello's alleged discrimination and harassment. Plaintiff claimed that Mr. Verello discriminated by replacing him as lead foreman with an "Italian" worker. Plaintiff claimed that defendants treated his replacement better than they had treated him, giving the new lead foreman greater responsibility and more help, and allowing him to tack up union posters they had ripped down from Mr. Punla's office. Plaintiff stated that he was among six minority workers who were fired while the only two white workers in their unit were retained. All of those minority workers were rehired except plaintiff (Compl. ¶¶ 10, 13–18, 21, 26, 31, 37, 42).

Defendants removed the action to the District Court on the ground that it asserted a federal question. They asserted that the state claims were preempted by Section 301(a) of the Labor Management Relations (Taft-Hartley) Act, which authorizes claims for violations of collective-bargaining agreements (Notice of Removal). *See* 29 U.S.C. 185(a).

**ANALYSIS**

District courts have removal jurisdiction over all civil actions that present a claim arising under the laws, treaties or Constitution of the United States. 28 U.S.C. 1331, 1441(a)–(b). District courts have federal-question jurisdiction over all state-law claims in areas where federal law completely preempts state law. Section 301(a) of the Labor Management

United States District Court

For the Northern District of California

Relations Act completely preempts state causes of action based on alleged violations of contracts between employers and labor organizations. *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). The party asserting removal jurisdiction has the burden of persuasion to show that the state-law claims are preempted. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995).

The determinative issue for the instant motion to remand is thus whether Section 301(a) preempts plaintiff's state-law claims. A state-law claim is completely preempted by Section 301(a) only when application of the state law to the claims requires interpretation of a collective-bargaining agreement. If a state-law dispute only tangentially involves a provision of a union contract, it is not preempted by Section 301(a). These preemption rules "promote peaceable, consistent resolution" of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 413 & n.12 (1988). The complaint itself must require interpretation of the contract. Preemption does not arise when interpretation is required only by a defense. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). In short, two things are required for preemption: (1) the complaint depends upon a contractual provision subject to more than one plausible construction and (2) the case cannot be resolved on the merits without choosing the correct interpretation of the contract and applying it to the claim.

Plaintiff's first through fourth claims all assert violations of the state Fair Housing and Employment Act:

1.  The first accuses Terminal Maintenance of discriminating against plaintiff in compensation, terms, conditions or privileges of employment because of his race. *See* Cal. Gov't Code § 12940(a).

2.  The second alleges that both defendants harassed plaintiff because he is a Filipino American. FEHA bars employers and "any other person" from harassing employees on account of their race. Employers must "take all reasonable steps to prevent harassment." *See* Cal. Gov't Code § 12940(j)(1), (j)(3).

3

3.      The third asserts that Terminal Maintenance failed to prevent harassment and discrimination against plaintiff.  Employers must "take all reasonable steps" to prevent discrimination and harassment.  *See* Cal. Gov't Code § 12940(j)(1), (k).

4.      The fourth accuses both defendants of retaliating against him for complaining about racial discrimination and harassment.  No one may discriminate against a person for opposing practices banned by FEHA.  *See* Cal. Gov't Code § 12940(h).

The fifth claim accuses Terminal Maintenance of negligence in its supervision and retention of Mr. Verello.  Plaintiff alleges that Terminal Maintenance breached a duty to "reasonably supervise" Mr. Verello and to ensure he was not discriminating against or harassing Mr. Punla.  He claims that Terminal Maintenance knew or should have known that Mr. Verello had "a propensity to behave inappropriately, offensively, and illegally toward minorities and was unfit" to supervise plaintiff (Compl. ¶¶ 41–42).

All of plaintiff's claims revolve around alleged disparate *treatment*, not disparate *impact*.  In other words, he claims that defendants were motivated by racial animus and by a desire to harm him for complaining.  He does not assert that some race-neutral policy had a negatively disparate impact on him because he was Filipino-American.

The claims do not require interpretation of the collective-bargaining agreement.  They are therefore not preempted by Section 301(a).  Defendants claim that interpretation will be necessary because it will provide them with legitimate business justifications for their actions (Opp. 4).  The assertion of such a defense, however, cannot create federal jurisdiction.  *See Caterpillar*, 482 U.S. at 398–99.

Defendants also point to portions of the complaint in which plaintiff refers to the union contract.  The first is at paragraph twelve:

> "Defendant Verello publically and belligerently harassed and belittled the four Filipino members of the Chassis division for an alleged failure to meet work requirements.  He verbally threatened to fire two of the mechanics if the entire crew did not falsify their work orders by billing 12

to 15 hours a day.  The forewarned termination would have utterly disregarded seniority agreements with the Union.

Plaintiff does not allege that *he* was one of the two mechanics who were threatened with firing. He does not even assert that he was one of the four people who were "harassed and belittled."[1] The passage quoted above therefore does not show that the Court would have to interpret the contract to evaluate claims by plaintiff that he suffered adverse employment action, which is an element of a FEHA discrimination claim.[2]

A threat of termination might, however, be proof that defendants had a discriminatory motive in taking action against plaintiff himself.  For instance, he might use the threat of termination as evidence that Mr. Verello harbored racial animus against Filipinos and was motivated by such hatred in acting against plaintiff.  Defendants have not shown, however, that such use of the allegation would require interpretation of the collective-bargaining agreement.  It is plausible that, no matter how the seniority agreements are construed, the claim would be resolved the same way.  For example, even if the alleged threat was fully compliant with the union contract, plaintiff might be able to demonstrate that it was made against Filipinos but not against non-Filipinos.  It would thus suggest racial animus.  On the other hand, even if the alleged threat was a blatant breach of the union contract, such threats might also have been made against non-Filipinos, thus negating any inference of animus.

Defendants also cite paragraph fifteen of the complaint.  It states that:

> After demoting Plaintiff Punla, Defendant Verello replaced him with Brad Carneseca, Caucasian, who had been laid off by TMC [Terminal Maintenance Co.] for several months and was re-hired a few days prior to Plaintiff Punla's demotion.  Despite being the least senior mechanic on the Chassis crew, Carneseca instantly

---

[1] There were six minority members of the Chassis Division in December 2002.  The complaint does not state how many minority members there were in the division on the date of the threat, September 19, 2002 (Compl. ¶¶ 12, 17–18).

[2] Even if the threat of termination was made against plaintiff, it would not have been an adverse employment action by itself.  *See Nunez v. City of L.A.*, 147 F.3d 867, 875 (9th Cir. 1998) (holding that mere threat of termination is not adverse employment action for First-Amendment retaliation claim); *Yanowitz v. L'Oreal USA, Inc.*, 32 Cal. Rptr. 3d 436, 459–60 (2005) (holding that implied threat of termination plus pattern of negative treatment *collectively* may be adverse employment action for sex-discrimination retaliation claim).

United States District Court
For the Northern District of California

1  assumed Plaintiff Punla's previous position.  This clearly violated
2  the Union agreement providing that promotions be governed by
   seniority.

3

4       Defendants have failed to name any portion of the contract the Court would have to

5  interpret to adjudicate a claim related to plaintiff's assertion about seniority rules.  At argument,

6  defendants cited Section 9 of the Pacific Coast Longshore Contract Document, the union

7  contract (*see* Def.'s Motion to Dismiss, Exh. 1).  They claimed that Section 9 was relevant and

8  ambiguous, therefore requiring interpretation.  Defendants' argument fails.  Section 9 states, in

9  relevant part:

10      There shall be established in each port a joint committee of registered longshoremen and
        of employers.  It shall be the duty of such committee to establish qualifications for
11      promotions to classifications covered by this Contract Document . . . and to pass on all
        such promotions.  . . .  Such qualifications shall include length of service in the industry
12      [and other factors]

13  (Pac. Coast Longshore Contract Doc. § 9.2).

14

15      This portion of the union contract says nothing about the content of any seniority rules

16  related to promotions.  It merely states *who* will determine those rules, and that the rules will

17  factor in seniority.  Defendants have not pointed to any evidence in the record, however, of the

18  qualifications set by the joint committee.  Nor does the Court's independent review of the

19  record reveal any such evidence.  Defendants thus failed to carry their burden of pointing to

20  some contractual provision that would require the Court's interpretation.

21      Defendants also assert that the state-law claims are preempted on the basis of three

22  events alleged by plaintiff to have occurred prior to July 1, 2002, the beginning date of the

23  contract period.  No party submitted the prior union contract, assuming there was one.  Thus,

24  there is no contract to interpret in considering those three allegations.  The events are:

25      1.      Plaintiff's initial hiring "over the objections of Defendant Verello upon the

26              insistence of Union President Henry Graham," in May 2001 (Compl. ¶ 7);

27      2.      Defendant Verello's alleged divestiture from plaintiff "of his responsibility over

28              the Gen-Set Division, contrary to their initial agreement and standard business

                                        6

practice," which purportedly occurred "[l]ess than two weeks after" plaintiff began his job (Compl. ¶ 8); and

3.    Defendant Verello allegedly telling plaintiff "that he was unwanted and that a replacement would be hired as soon as possible," which purportedly occurred during the same two-week period (*ibid.*).

One reason plaintiff's claims are not preempted is that state law bars FEHA rights from being waived by employees or by unions. *Ramirez*, 998 F.2d at 748. Defendants therefore cannot legitimize otherwise unlawful conduct by claiming it was proper under the union contract. Furthermore, an employer can violate FEHA whether it complies with the union contract or breaches it. That is because FEHA rights are "defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989). Defendants ignore this principle, stating that "there was no disparate treatment of Mr. Punla, as all of his treatment was pursuant to the Union agreement" (Opp. 4). Defendants thus seem to contend that their actions *must* be justified if they abided by the contract. Such a contention fails to acknowledge that defendants could treat plaintiff in accord with the contract yet still discriminate against him.

This principle also comes into play in considering particular allegations made by plaintiff. For example, plaintiff alleges that he was allowed to use only one yard handler whereas his white replacement was allowed to use four (Compl. ¶ 16). Defendants assert that this claim will require interpretation of provisions in the contract (Opp. 3). But a court possibly could resolve that issue by finding that, whether or not defendants were justified in giving plaintiff less help, their *motivation* for doing so was racial animus. Defendants thus could have violated FEHA without dishonoring the contract.

This order is in step with a long list of Ninth Circuit decisions holding that FEHA actions were not preempted by the Labor Management Relations Act. *See Ramirez*, 998 F.2d at 749; *Jimeno*, 66 F.3d at 1528; *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238 (9th Cir. 1990); *Ackerman v. W. Elec. Co., Inc.*, 860 F.2d 1514, 1521 (9th Cir. 1988); *Chmiel*, 873 F.2d

United States District Court

For the Northern District of California

at 1286; *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 646 (9th Cir. 1989); *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1012 (9th Cir. 2002) (holding that claim under Washington state's Law Against Discrimination was not preempted); *Miller v. AT & T Network Sys.*, 850 F.2d 543, 551 (9th Cir. 1988) (holding that claim under Oregon antidiscrimination statute was not preempted).

*Ramirez* is right on point.  The plaintiff there alleged that, because she was Hispanic, her employer required her to submit jury-service verification forms that non-Hispanics allegedly were not required to turn in.  The Ninth Circuit stated:

> The Bargaining Agreement may be crystal clear — that all or no employees need such verification forms — but Fox nonetheless may have ignored the Bargaining Agreement in Ramirez's case or applied it to her in a discriminatory manner.  Thus, reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms.  If it were, all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the agreement.

998 F.2d at 749.

All defendants' other arguments for why the first through fourth claims are preempted involve two steps.  First, they point to a portion of the complaint that asserts some adverse employment action or that asserts differential treatment of minority employees as compared to non-minority workers.  Second, they allege that the union contract must be consulted to determine if such actions were proper under the contract.  For example, they point to paragraph ten of the complaint which states that "Defendant Verello cut two hours of overtime from Plaintiff Punla's paycheck . . . .  However, Ron Ott's wages were never changed . . . ."  (Ron Ott was "Caucasian").  Defendants assert that "[t]he CBA must be interpreted to determine the terms and conditions of overtime and when it may be cut" (Opp. 3).

Such an argument demonstrates only that *reference* to the contract *might* be relevant to the claims.  It does not prove (1) that the overtime provisions are ambiguous and amenable to more than one plausible construction or (2) that the Court would have to construe the overtime provisions in order to adjudicate any of plaintiff's claims.  It is entirely possible that, whether or not thus cutting overtime was proper under the agreement, it was motivated by racial animus

and therefore unlawful.  Nowhere in their discussion do defendants tie any of these provisions and excerpts to analysis of the elements plaintiff must prove to make out a prima facie case under FEHA.  Such an analysis is insufficient to invoke federal jurisdiction.  As the Ninth Circuit held in *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) (en banc):  "A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility."

Plaintiff's fifth claim, accusing Terminal Maintenance of negligence, also does not require interpretation of the collective-bargaining agreement.  Defendants inadvertently concede as much, stating that "with reference to the 'Fifth Cause of Action,' it is clearly not pre-empted either" (Opp. 6).  The Court, however, assumes that this was a misstatement of defendants' position, although perhaps a Freudian slip.  The Court analyzes this issue as if defendants had unequivocally asserted that the claim *is* preempted.

The right to sue for negligence in California is authorized by Civil Code Section 1714(a), which makes "[e]veryone . . . responsible . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."  *See Rowland v. Christian*, 69 Cal.2d 108, 112 (1968) (holding that Section 1714 superceded prior common-law negligence rules).  Negligence is actionable only when there is a legal duty to use due care, a breach of that duty and the breach is the proximate cause of the resulting injury.  *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 594 (1970).

Rights to sue for negligence can be waived.  *See generally Knight v. Jewett*, 3 Cal.4th 296 (1992).  The waiver of rights by union contract is only recognized, however, if the waiver is "clear and unmistakable."  *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994).  In the instant case, plaintiff might have asserted that the purported duty of Terminal Maintenance was created by contract.  If the contract expressly had waived any negligence rights, the claim would have raised a federal question.  *But see Hine v. Dittrich*, 228 Cal. App.3d 59, 62 (Cal. Ct. App. 1991)

(holding that claim of negligent supervision was beyond scope of collective-bargaining agreement and therefore not preempted).  Plaintiff did not, however, name the source of Terminal Maintenance's duty.  It is therefore not apparent that the negligence claim is foreclosed by the contract.  Also, defendants have not cited to any portion of the contract purporting to waive negligence rights, much less to do so unambiguously.  Nor have defendants otherwise demonstrated that this claim will require interpretation of the collective-bargaining agreement.  Furthermore, plaintiff may assert that the duty arose from FEHA itself and thus could not be waived or superceded by the collective-bargaining agreement.[3]

Defendants' opposition is notable for its inability to muster more than one decision. That decision is *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999).  It, however, does not control the instant motion.  In *Audette*, the plaintiffs were union employees who alleged that their union and employer breached a settlement agreement in retaliation for a civil-rights lawsuit and because women were among those who would have benefitted from the agreement.  The plaintiffs alleged that breach of the settlement violated state antidiscrimination statutes.  The settlement agreement, however, provided that the defendants did not need to perform certain terms of the agreement if they had a legitimate business justification.  Certain provisions of the union contract provided defendants' justifications.  The Ninth Circuit held the discrimination claims were preempted because determining whether the settlement agreement was breached in the first instance would require interpretation of the collective-bargaining agreement.  An issue dispositive to the plaintiffs' discrimination claims — whether the settlement agreement had been breached — could not be resolved without an interpretation of the collective-bargaining agreement.  *Audette*, 195 F.3d at 1110, 1112–13; *see also Humble*, 305 F.3d at 1012 (analyzing *Audette* identically); *Chan v. Albertson's, Inc.*, No. C 02-1157 CRB, 2002 WL 981912 at *3 (N.D. Cal. remanding

---

[3] Normally, there is no common-law cause of action for discrimination under FEHA because that statute was intended to be the exclusive remedy for a discriminatory wrongful discharge. *Cook*, 911 F.2d at 238.  If plaintiff has some way around this rule, and claims that the duty to supervise arises under FEHA, his negligence rights probably could not be waived. *Cf. Clinkscales v. Carver*, 22 Cal.2d 72, 75 (1943) (holding that courts may use statutory duties as standards of due care in civil negligence suits).

United States District Court
For the Northern District of California

action May 1, 2002) (analyzing *Audette* identically).  Here, there is no such necessary reliance on the union contract, as explained above.  *Audette* therefore does not control.

At the motion hearing, defendants handed the Court a photocopied excerpt of *California Practice Guide: Federal Civil Procedure Before Trial*, *California Edition* by Judge William Schwarzer, Judge A. Wallace Tashima and James M. Wagstaffe.  The passage identified "rough guidelines" for reaching the proper result in Labor Management Relations Act preemption analyses.  The Court cannot rely upon that excerpt because it is about five years out-of-date, having been published in 2001.  More important, the 2006 version of the treatise no longer advocates following those guidelines.

Plaintiff requests the award of attorney's fees and costs pursuant to 28 U.S.C. 1447(c), which authorizes such fee-shifting.  Fees may be awarded only when the defendant did not have an "objectively reasonable basis" for seeking removal.  *Martin v. Franklin Capital Corp.*, ___ U.S. ___, 126 S.Ct. 704, 711 (2005).  Due to the number of times plaintiff referred in his complaint to the collective-bargaining agreement, defendants had an objectively reasonable basis for seeking removal.  An award of attorney's fees and costs therefore is not justified.

## CONCLUSION

Plaintiff's allegations are substantially independent of the collective-bargaining agreement and therefore not preempted by federal law.  Plaintiff consequently has a right to pursue his grievances in the forum of his choice.  The motion to remand is **GRANTED**.  The removal was objectively reasonable, so plaintiff's request for fees and costs is **DENIED**.  As a result of the remand decision, defendants' motion to dismiss is **MOOT**.

**IT IS SO ORDERED.**

Dated:  March 16, 2006                                  _____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE